The UNITED STATES of America

v.

James R. WATSON and Janice J. Buress.

Crim. No. 82–00314.

United States District Court, District of Columbia.

Dec. 9, 1982.

Theodore A. Shmanda, Asst. U.S. Atty., Washington, D.C., for plaintiff.

William J. Garber, Washington, D.C., for Watson.

Arthur M. Levin, Washington, D.C., for Buress.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Co-defendants James Watson and Janice Buress, charged with the importation and

possession of narcotics with intent to distribute, have moved to suppress certain physical evidence seized on August 19, 1982, from the automobile in which they were riding when arrested and contemporaneously found in their living quarters in a search being made pursuant to a warrant. The evidence defendants seek to suppress is a letter-sized envelope containing heroin found under the passenger seat of Watson's car and narcotics paraphernalia found in the room they rented in a private home. The validity of the arrests and the premises search depends upon the sufficiency of an affidavit submitted by a postal inspector for an earlier magistrate's warrant to open first-class mail which, when opened, was found to contain the heroin.

Watson and Buress resided for more than a year in a first-floor room they rented in a house at 3006 10th Street, Northeast, owned by Burgess Smoot and Ann Gholston. During that period Smoot and Gholston observed letters arriving at the address at approximately weekly intervals bearing a Hong Kong postmark and addressed to various persons surnamed "Thomas," "Butler," or "Porter" who, if they exist at all, did not live at the house. On one occasion Gholston opened such a letter, found within a substance she believed to be hashish, and mailed it back to the sender, a "forwarding agency" in Kowloon, Hong Kong. On other occasions, however, Watson claimed the letters as belonging to "friends" who, he said, were receiving mail in his care.

In July, 1982, concerned that they would be implicated if the letters did contain narcotics, Smoot and Gholston related their suspicions to Dets. Betts and Poole of the Metropolitan Police Department's 5th District Vice Unit. On July 29th they turned over to Det. Poole a letter addressed to an "Ann L. Thomas" which they had opened and found to contain an off-white powder. Det. Poole's field test indicated the powder to be an opiate. On August 2nd Smoot and Gholston brought another letter addressed to a "Mr. Mary J. Porter," to Det. Betts. It, too, contained a white powder which Det. Betts field tested as positive for heroin. Det. Betts then contacted Postal Inspector Gerald Dexter who interviewed Smoot and Gholston himself the following day, eliciting essentially the foregoing information, and instigated a mail watch for similar items at the Brookland Station of the Washington, D.C. Post Office.

On August 16th yet another letter, addressed to "Mr. Mary K. Porter," was intercepted by the mail watch, and Dexter asked the M.P.D. Narcotics Branch for canine assistance in conducting what defense counsel has termed a "letter lineup." A canine officer responded with a dog known as "Max 25" who selected the "Porter letter" by scent from a random assembly of eight letters as containing narcotics. The following day Dexter applied for and obtained a magistrate's warrant to open the letter.

■ The Court concludes that the narcotics found in the letter when opened, together with the circumstances of its subsequent delivery to the premises where it was claimed by defendants who departed with it in Watson's automobile, supplied ample probable cause for the warrant of August 19th to search the defendants' room and the warrantless search of Watson's car whether before or after his arrest. *United States v. Fulero,* 498 F.2d 748 (D.C.Cir.1974); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See United States v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). The issue, therefore, is whether there existed probable cause for the warrant to open the letter, and that, in turn, must be determined exclusively from Insp. Dexter's affidavit in support of his application for search warrant No. 82–0411M of August 17, 1982, reproduced in full in the appendix hereto.[1]

---

1. No other evidence was submitted to the magistrate in connection with the application. The parties are agreed that, unlike warrantless searches which (when permitted at all) can be justified afterwards by a showing of all the facts within an officer's contemplation which gave him reason to believe contraband would probably be found, it is the evidence presented to the magistrate which alone determines the validity of a search pursuant to a warrant. *See*

■ The affidavits of law officers in support of warrant applications are presumptively valid. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). They may contain hearsay so long as there is a substantial basis for crediting it. *Jones v. United States,* 362 U.S. 257, 272, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960) *overruled on other grounds, United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). They may consist entirely of information supplied by anonymous informants if there appear some underlying circumstances suggesting the informants' credibility or reliability. *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). Factual inaccuracies which do not go to the "integrity" of an affidavit do not impair its validity, *Rugendorf v. United States,* 376 U.S. 528, 532, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964), and integrity can be impugned only by a showing of deliberate falsehood or reckless disregard for the truth. *Franks v. Delaware, supra,* 438 U.S. at 171, 98 S.Ct. at 2684. Moreover, such affidavits are to be given a commonsense reading for the very practical reason that they are usually drawn by nonlawyers "in the midst and haste of a criminal investigation." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

Measured by such standards, it is clear that Insp. Dexter's affidavit in its entirety demonstrates sufficient probable cause to believe the August 16th letter contained narcotics, even though it omits some of the relevant underlying circumstances (e.g., Det. Poole's field test of the "Thomas letter" on July 29th). Defendants argue, however, the magistrate could find probable cause from it only if allowed to consider Det. Betts' confirmation by field test of the presence of narcotics in the "Porter letter"

received August 2nd and Max 25's subsequent identification of the nearly identical letter received on August 16th. Shorn of those two circumstances, they say, the magistrate would have been left with nothing more than Dexter's recital of Smoot's and Gholston's unconfirmed suspicions—not enough to persuade a truly "neutral and detached magistrate" to issue a warrant. *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

Defendants contend Det. Betts' field test on the contents of the letter received August 2nd must be rejected because it was opened, not by Gholston as Dexter averred, but by a 5th District police sergeant to whom she had given the envelope before Betts arrived.[2] Thus Betts' field test was not performed upon evidence obtained from an "independent source" (albeit by possibly unlawful means) which came into the government's possession fortuitously, but, rather, upon evidence the government itself had secured unlawfully by opening first-class mail without a warrant. Defendants assert that the results cannot, therefore, be used at all, even to obtain a magistrate's permission to conduct a subsequent lawful search. *Walter v. United States,* 447 U.S. 649, 653–54, 100 S.Ct. 2395, 2400, 65 L.Ed.2d 410 (1980); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920); *United States v. Jacobsen,* 683 F.2d 296, 299–300 (8th Cir. 1982).

■ The government argues that a warrant was unnecessary to open the letter, arriving as it had from abroad. *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). Alternatively, it urges that Smoot and Gholston, having at least a possessory right to the letter in the circumstances, could and did give the police sergeant permission to open it. *See United*

---

*United States v. McDonnell,* 315 F.Supp. 152, 162–63 (D.Neb.1970).

**2.** The government conceded the error in Dexter's affidavit in advance of the hearing on the motion to suppress. Dexter testified at the suppression hearing that he neither asked nor was told prior to making his affidavit who had actually opened the envelope and merely as-

sumed Gholston and/or Smoot had done so based upon their knowledge of what it contained and the fact that they had opened earlier letters themselves. The Court finds for the record that Dexter's averment was not a deliberate falsehood nor made with reckless disregard for the truth.

*States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The Court concludes, however, that it is unnecessary to decide whether the letter was lawfully opened, because defendants are without standing to object to it. Whatever their privacy expectations for it might have been had it been addressed to either of them, since neither has ever purported to be "Mary Porter" the Fourth Amendment does not protect any interest they may have in keeping it sealed. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

▮ Defendants also contend that Max 25's letter identification must be discounted because Insp. Dexter's affidavit contains no description of the dog's qualifications or past performance as a reliable detector of narcotics. Dexter did assert, however, that Max 25 was being handled by a canine officer assigned to the M.P.D.'s Narcotics Branch at the time, from which the Court concludes that the magistrate could reasonably have inferred that the dog's skills were not those of an ordinary housepet. While canine-conducted narcotics searches may have encountered some judicial skepticism in the past, the technique is now sufficiently well-established to make a formal recitation of a police dog's *curriculum vitae* unnecessary in the context of ordinary warrant applications. *See United States v. Fulero, supra; United States v. Venema,* 563 F.2d 1003 (10th Cir. 1977); *United States v. Klein,* 626 F.2d 22 (7th Cir.1980).

For the foregoing reasons it is, this 9th day of December, 1982,

ORDERED, that defendants' motion to suppress the physical evidence seized on August 19, 1982, is denied.

## APPENDIX

### AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

That GERALD A. DEXTER is a Postal Inspector for the U.S. Postal Inspection Service and that he has been employed with that agency for approximately 11 years. That during his term of employment he has had the opportunity to obtain and serve numerous search and arrest warrants as a result of criminal investigations. Inspector Dexter makes this affidavit to search for and seize contraband from the following:

> First-class letter measuring 4¼″ × 8½″, bearing the address of Mr. Mary K. Porter, 3006 10th Street, NE, Washington, DC 20017, USA, and postmarked at Kowloon, Hong Kong on August 7, 1982, with $4.10 postage. The return address shows Lee's Fordarding (sic) Agcy., 655, Nathan Road, 18/Fl. 1801, WuSang House, Kowloon, Hong Kong.

Mr. Burgess Smoot and Ms. Ann L. Gholston, are owners and reside at 3006 10th Street, NE, Washington, DC 20017. For a period of more than one year, Mr. Smoot has allowed his sister, Janice Buress, and her male friend, James R. Watson, to occupy a bedroom in his residence.

Over this same period of time, Mr. Smoot has occasionally noted letters received in his mailbox with fictitious names showing return addresses in Hong Kong. These letters have all been claimed by James Watson as belonging to people known to him. Also during this period of time, Mr. Smoot has suspected his sister and James Watson to be involved with the use of narcotics.

On August 2, 1982, a letter arrived in the mail addressed to Mr. Mary J. Porter at 3006 10th Street, NE, Washington, DC. This letter also showed a return address in Hong Kong. Ann Gholston opened the letter and brought it to the Metropolitan Police Department, Fifth District. The letter contained, between two cardboard sheet inserts, a plastic bag with a quantity of unknown white powder. The white powder was field tested by Detective John Betts, Fifth District Vice Unit, for narcotic substances. It reacted positively for heroin.

On August 16, 1982, a letter addressed to Mr. Mary K. Porter, and postmarked at Kowloon, Hong Kong, on August 7, 1982, with $4.10 postage and return address of Lee's Fordarding (sic) Agcy., 655, Nathan

Road, 18/F1. 1801, WuSang House, Kowloon, Hong Kong was received at the Brookland Delivery Station of the Washington, DC Post Office.

On August 16, 1982, Canine Officer Mike Bernier, Metropolitan Police Department Narcotics Branch, handling canine "Max 25", reacted positively for the presence of narcotics in the above-described letter, which was randomly placed among seven other "test" letters. This suspect letter has subsequently been taken to Room 3034 of the City Post Office, Massachusetts Avenue, and North Capitol Street, NE, Washington, D.C., where it is presently secured.

Based on the foregoing information your affiant has reason to believe that on the premises known as the United States Post Office, Postal Inspectors' Office, Room 3034, North Capitol Street and Massachusetts Avenue, NE, Washington, DC, there is a letter described above that contains a narcotic substance that is in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 952, and 21 U.S.C. § 843(b). All of the above facts are known personally to the affiant.

/s/ Gerald A. Dexter
Postal Inspector

Subscribed and sworn to before me this Aug. 17, 1982 day of August, 1982.

/s/ Jean F. Dwyer
U.S. Magistrate