UNITED STATES of America

v.

**Victor HUGGINS, Paul Grant, Francis Benson, and Alvin Johnson.**

Crim. No. 90–0041.

United States District Court,
District of Columbia.

March 21, 1990.

Robert Feitel, Asst. U.S. Atty., Washington, D.C., for U.S.

Nathan I. Silver, Washington, D.C., for defendant Johnson.

Michael J. McCarthy, Bowie, Md., for defendant Benson.

Robert M. Werdig, Jr., Washington, D.C., for defendant Huggins.

Thomas Lumbard, Washington, D.C., for defendant Grant.

## MEMORANDUM DECISION AND ORDER

REVERCOMB, District Judge.

The defendants [1] in this matter are indicted with one count of possession with intention to distribute cocaine base of 5 grams and more in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii), two counts of using a firearm during and in relation to the possession with intent to distribute a controlled substance in violation of 18 U.S.C. § 924(c), and one count of possession with intention to distribute cocaine base of 5 grams and more within one-thousand feet of the real property of a public school in violation of 21 U.S.C. § 845a. This matter is before the Court pursuant to defendant Johnson's motion for suppression of physical evidence on the grounds that the search warrant was not based upon probable cause.

### I. Facts

The defendants were arrested at the premises of 934 Quincy Street, N.W. on December 20, 1989. That day at 8:10 p.m., District of Columbia Metropolitan Police officers and agents of the Drug Enforcement Administration, Bureau of Alcohol, Tobacco and Firearms, and the Immigration and Naturalization Service executed an unnumbered D.C. Superior Court search warrant for the premises.

When the police executed the warrant they found an open trash bag in the kitchen with several rocks of crack cocaine with an approximate weight of twenty-five grams lying on top of the garbage. They also found an unloaded .32 caliber Smith & Wesson revolver, serial number 583689, in the trash bag. A crack pipe was sitting on a kitchen counter and other drug paraphernalia was found in the kitchen cabinets.

A search of the living room resulted in the recovery of an unloaded .22 caliber Browning handgun, serial number 655PM8161, from underneath a cushion on the sofa. A razor blade and other paraphernalia were also found in the living room.

In the ground floor den, the police recovered a cigarette package containing thirty-four packets of cocaine, with a total weight of approximately fifty-one grams, behind the sofa. On a bookcase in the den was a crack pipe, rolling papers, and other drug paraphernalia.

In the basement or downstairs den, the police recovered a napkin on top of a bookcase with approximately forty-nine grams of cocaine. The police also found two other rocks of crack cocaine, weighing approximately forty-three grams, lying on the floor behind the bar area in the den. Several rounds of .32 caliber ammunition were also found.

In an upstairs bedroom the police recovered a small black leather case containing five rounds of .32 caliber ammunition from a leather coat.

Investigator Henry C. Lancaster obtained a search warrant for the entire premises of 934 Quincy Street, N.W., on December 14, 1989. Accordingly to the affidavit, an informant told Lancaster, and DEA Agent Ryans, that "cocaine (crack) was being sold from the premises of 934 Quincy Street, N.W."

The affidavit further provided that the informant made a controlled narcotics purchase at 934 Quincy Street.[2] Lancaster

---

1. Defendant Grant remains a fugitive.

2. The affidavit provided that the confidential "source has been used on at least nine (9) occasions whereas information have been obtained resulting in the issuance and execution of search warrants, where there were seizures of narcotics, narcotic contraband and money and the arrest and conviction of subjects. * * * The [informant] has never proven to be unreliable."

Defendant Benson has filed a motion for suppression of physical evidence based on the general and conclusory information in the affidavit as to the informant's veracity. In light of this Court's suppression of the evidence on other grounds, this Court does not reach this issue.

and Ryans met the informant at a prearranged location where the informant was searched and found to be free of any narcotic contraband or money. The informant was provided with United States MPDC currency and instructed to make a narcotic purchase from the premises of 934 Quincy Street, N.W. The informant proceeded to 934 Quincy Street, N.W. under police surveillance. At no time did the informant make contact with anyone on the street. The informant knocked on the back door of the premises at 934 Quincy Street and gained entrance. After being inside the premises for a short while the informant exited through the back door and provided Lancaster with a plastic zip lock packet containing a white rock crystal which the informant stated he had purchased "from out of the rear of 934 Quincy St., N.W." The white rock crystal was subject to a preliminary field test which gave a positive reaction to the presence of cocaine. The affidavit failed to state the time and date of the controlled purchase.

## II. Legal Analysis

■ A valid search warrant may only be issued upon an affidavit or complaint which sets forth facts establishing probable cause. United States Const. amend IV; Fed.R.Crim.P. 4(a). To demonstrate probable cause, an affidavit must set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime. *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967); *United States v. Laws*, 808 F.2d 92, 94 (D.C.Cir. 1986). To determine whether a search warrant is supported by probable cause, a flexible totality-of-the-circumstances standard is employed. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). In *Gates*, the Court held:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair prob-

ability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238–39, 103 S.Ct. at 2332. In determining whether a warrant is supported by probable cause "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." *Id.* (citations omitted); *see also United States v. Vaughn*, 830 F.2d 1185, 1187 (D.C.Cir. 1987).

The defendant contends that the search warrant is not supported by probable cause because it does not state the time and date that the informant purchased the drugs at 934 Quincy and there is no way to infer from the affidavit how recently the events it describes might have taken place.

■ A finding of probable cause requires a determination that certain objects can currently be found at a particularly described place. 1 W. Ringel, *Searches & Seizures, Arrests and Confessions*, § 4.2(a) at 4–13 (1988). "[I]f the information is too old, it is considered stale and probably no longer exists." *United States v. Rakowski*, 714 F.Supp. 1324, 1329 (D.Vt. 1987) (citing *Sgro v. United States*, 287 U.S. 206, 210–12, 53 S.Ct. 138, 140–41, 77 L.Ed. 260 (1932)); *see also Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

■ In the instant case, there is nothing in the affidavit from which the date of the controlled purchase can be determined and accordingly there was no way for the judicial officer to determine whether the information was stale. The controlled purchase could have occurred "a day, a week, or months before the affidavit." *Rosencranz v. United States*, 356 F.2d 310, 316 (1st Cir.1966) (information was stale where affidavit contained neither the date of the informant's observation nor the date the information was given to the affiant); *see also United States v. Elliott*, 576 F.Supp. 1579, 1581 (S.D.Ohio 1984) (information stale where affiant neglected to include the date of the anonymous complaints or the dates of his surveillance); *Gonzales v. Texas*, 577 S.W.2d 226 (Tex.Cr.App.), *cert. denied*, 444 U.S. 853, 100 S.Ct. 109, 62

L.Ed.2d 71 (1979) (information stale where affidavit does not state when the officers received the information from their informer nor when the informer obtained his information).

Although the affidavit fails to provide the date and time of the controlled purchase, the government argues that it is understood by law enforcement officials and judicial officers in the District of Columbia that applications for search warrants are, as a matter of practice, made soon after a controlled purchase and that the judicial officer in the instant case presumably took implicit notice of the fact. The government relies upon *United States v. Watson*, 551 F.Supp. 1123 (D.D.C.1982), where the court upheld a finding of probable cause to issue a search warrant based on the lead of a drug sniffing dog. Although the affidavit failed to establish the dog's veracity, *i.e.*, its training to sniff drugs, the court held that the technique for canine-conducted narcotics searches "is now sufficiently well-established to make a formal recitation of a police dog's curriculum vitae unnecessary in the context of ordinary search warrant applications." *Id.* at 1127.

■ As a threshold matter, the courts should be extremely cautious in allowing a probable cause finding to be made based on information outside of the affidavit and of which the judicial officer is only presumed to know, especially where that information is critical to such a determination. Moreover, the government's reliance on *Watson* is inapposite. In *Watson* the court based its judicial notice on the fact that police dogs are subject to consistent and established training procedures. However, the government in the instant case has made no showing that *all* applications for search warrants are in fact made within an established period of time, *i.e.*, 24 hours, after the date of a controlled purchase of narcotics.

The government further contends that notwithstanding the failure of the affidavit to state the date of the controlled buy it is otherwise apparent from the affidavit that the drug activity was an ongoing enterprise at the time that the police applied for the search warrant. When an affidavit describes an ongoing course of criminal conduct, there is greater reason to conclude that the items will be recovered. Accordingly, in such a case " 'the passage of time between the last described act and the application for the warrant becomes less significant.' " *United States v. Turner*, 713 F.Supp. 714, 720 (D.Vt.1989) (quoting *United States v. Payden*, 613 F.Supp. 800, 814 n. 10 (S.D.N.Y.1985)).

In the instant case, there is no basis in the affidavit to find ongoing criminal activity at the time the warrant was issued. The government relies upon the statement by the informant contained in the affidavit that crack "was being sold" out of the premises.[3] However, the statement essentially begs the question that is raised by the failure to include the date and time of the controlled purchase, namely, *when* was crack being sold. Whether the crack "was being sold" a day, a week or months before the time of the affidavit is as important and relevant to determining probable cause as the date of the controlled purchase.

---

3. In other cases where a search warrant has failed to include the date, courts have nonetheless found the information fresh when the time can be inferred from the affidavit. In *Herrington v. State*, 287 Ark. 228, 697 S.W.2d 899 (1985), the court provided:

It is the uniform rule that some mention of time must be included in the affidavit for a search warrant.... The only softening of this position occurs when time can be inferred from the information in the affidavit. For example, where an affidavit recited that the contraband was "now" in the suspect's possession and that the search was urgent, that was found to be adequate to satisfy the time requirement.... In another case where the affidavit said that contraband was "recently" seen, coupled with the use of the present tense as to location of the contraband, that was held to be sufficient.... Time is crucial because a magistrate must show that criminal activity or contraband exists where the search is to be conducted at the time of issuance of the warrant.... That is not an unreasonable nor technical demand of the law.

*Id.* 697 S.W.2d at 900 (citations omitted). In the instant case, the statement that crack "was being sold" does not suggest timely or fresh information. Indeed, the statement is not even in the present tense.

This Court does not accept the government's implicit assumption that if crack was at one time being sold then the operation is ongoing until interrupted by law enforcement activity. Precisely because of its illegality a drug trafficking scheme has an attenuated existence unlike a legitimate business with an ongoing or continuing concern. To point out the obvious, the goal of selling drugs is to dispose of them and whether the dealer has an available and steady supply with which to restock his merchandise is dependent upon a variety of factors, including the success of law enforcement in interdicting cocaine before it gets into the United States. This is not a case in which there were multiple controlled purchases or continuing surveillance of the premises by the police. The statement that crack "was being sold" and a single undated controlled purchase does not suggest an ongoing criminal scheme.

The inability to determine the currency of the controlled purchase is especially troubling in the instant case because of the nature of the evidence sought and the nature of the illegal activity. A nexus exists between the currency of the information and these other factors. In many cases where courts have found freshness and probable cause to support a search warrant the authorities have sought material of a *permanent* nature, *i.e.,* documents and records. *See United States v. McGrath,* 622 F.2d 36, 42 (2d Cir.1980) (no staleness where bookmaking records of an ongoing gambling operation are "relatively permanent ... paraphernalia"); *United States v. Matthews,* 572 F.2d 208, 209 (9th Cir.1977) (reasonable to expect documents and records to remain on premises for at least a month). In the instant case the criminal activity is the sale of drugs which by definition seeks to dispose of the contraband. Accordingly, the need to know of the date of the controlled purchase was imperative in order to find probable cause. Thus, based on the totality of the circumstances, this Court rules that the search warrant was not supported by probable cause.

Notwithstanding the lack of probable cause for the search warrant, the United States Supreme Court has approved a good-faith exception to the exclusionary rule. It held in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), that evidence could be admitted even if it was obtained by officers executing a search warrant which was not supported by probable cause. Suppression remains a remedy, however, in four circumstances, two of which are pertinent in the instant case: (1) "when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and (2) when a warrant is so facially deficient "that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. at 3421.[4]

In the instant case, the law enforcement authorities were not justified in relying upon the warrant because on its four corners the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." As the court held in *Herrington,*

> Pursuant to *Leon* and *Collins* [*v. State,* 280 Ark. 453, 658 S.W.2d 877 (1983) ], we do not hold that the absence of a reference to time in an affidavit makes the subsequent warrant automatically defective. Rather, in such a situation, we look to the four corners of the affidavit to determine if we can establish with certainty the time during which the criminal activity was observed. If the time can be inferred in this manner, then the police officer's objective good faith reliance on the magistrate's assessment will cure the omission.

697 S.W.2d at 900–901. This Court rules that the good-faith exception to the exclusionary rule is not available under the standard enunciated in *Leon.* In the present case, a reasonably well-trained officer would have known that more was needed

---

**4.** The other two instances occur when (1) a magistrate is misled by information the affiant knew was false and (2) the magistrate wholly abandons a detached and neutral judicial role. *Id.*

to establish probable cause than what was contained in the affidavit.

Accordingly, it hereby is

ORDERED that the Motion to Suppress Physical Evidence be, and the same hereby is, GRANTED; and it is further

ORDERED that the physical evidence be, and the same hereby is, SUPPRESSED as to all the defendants.[5]

---

**5.** The government suggests that defendants Benson and Huggins may not have standing to challenge the search warrant and has according- ly represented to this Court that it may file a motion for reconsideration of this Court's Order as to those defendants.