**UNITED STATES of America,**

v.

**David DILLON, Defendant.**

**No. 92–CR–37C.**

United States District Court, W.D. New York.

Oct. 5, 1992.

---

Dennis C. Vacco, U.S. Atty. (John E. Rogowski, Asst. U.S. Atty., of counsel), Buffalo, NY, for the U.S.

Joel L. Daniels, Buffalo, NY, for defendant.

## DECISION AND ORDER

CURTIN, District Judge.

After United States Magistrate Judge Carol E. Heckman filed her decision on July 28, 1992, defendant filed objections to the report. The court has considered the objections, the memorandum of law submitted by the government, and heard oral argument on the defendant's appeal of the Magistrate Judge's decision.

It is apparent that the recommendation of the Magistrate Judge is in good order and should be upheld. It should be noted

that the defendant has not quarreled at all with any of the findings of fact made by the Magistrate Judge, and the Magistrate Judge's analysis of the legal questions posed is well taken. Therefore, the decision of the Magistrate Judge is affirmed.

Jury selection is set for November 9, 1992. A pretrial meeting shall be held with counsel on October 29, 1992, at 9 a.m.

So ordered.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by United States District Judge John T. Curtin pursuant to 28 U.S.C. § 636(b)(1)(B) to hear and report on Defendant's pending motion to suppress certain evidence. Oral argument was heard on July 20, 1992. For the reasons set forth below, I recommend that the court deny Defendant's motion.

## FACTS

On February 4, 1992, United States Magistrate Judge Edmund F. Maxwell issued search warrants, upon the applications and affidavits of Drug Enforcement Agency ("D.E.A.") Task Force Agents Thomas Gerace and Philip Torre, authorizing the search of six United Parcel Service ("UPS") parcels addressed to Defendant David Dillon, 15 North Davis Street, Orchard Park, New York (the "parcel search warrant," # 92–41M), and authorizing the search of the residence located at that address (the "residence search warrant," # 92–42M). These applications were made on the agents' information and belief that the UPS packages contained controlled substances in violation of 21 U.S.C. §§ 841(a) and 844, and that marijuana, cash, books, receipts, notes, ledgers and other documents and records as evidence of violations of 21 U.S.C. §§ 841 and 846 would be found at Defendant's North Davis Street residence. See Exhs. A–D, attached to Notice of Motion to Suppress, Item 9. Upon execution of those warrants on February 4, 1992, D.E.A. agents seized approximately 313 pounds of marijuana, 3 firearms, various types of ammunition, books, records, and other items. See Exh. F, Item 9.

The affidavits in support of the search warrant applications set forth the following facts:

On February 3, 1992, D.E.A. Special Agent Dale Kaspryk, Buffalo, New York, received information from D.E.A. Special Agent Robert Patton, Carlsbad, California, regarding an investigation which Agent Patton's office had been conducting since October, 1991, involving an individual named Christopher Breen. According to Agent Patton, the investigation had determined that Mr. Breen had apparently been sending large quantities of cocaine and marijuana from San Diego, California to the Buffalo, New York area. The investigation had been initiated based on information obtained from a confidential informant, verified through other informants and subsequent investigation, that Mr. Breen had been sending narcotics to Defendant utilizing a postal annex store in Delmar, California. On January 31, 1992, Agent Patton went to the postal annex store in Delmar and obtained various receipts, in the name of David Jung, for packages sent to Defendant from the postal store. According to the informant, Mr. Breen used the name of David Jung during the course of his alleged narcotics activities.

On February 3, 1992, the manager of the postal annex store called Agent Patton and informed him that David Jung had just delivered six boxes to be sent by UPS to Defendant at the Orchard Park, New York address. According to Agent Patton, he and other D.E.A. agents proceeded to the UPS office in San Diego, at which time they located the six parcels addressed to Defendant at his North Davis Street address. Before the packages were loaded on a plane for shipment to the Buffalo, New York airport, a United States Customs Service narcotics detection dog named "Buck" sniffed the six packages and positively alerted on all six. According to Agent Gerace's affidavit, "Buck" is trained to detect, among other things, the odors of

cocaine and marijuana. The packages were then loaded on the plane and shipped to Buffalo for delivery. At approximately 6:30 a.m. on February 4, 1992, Agent Gerace and other D.E.A. agents located the six parcels at the Buffalo Airport. The six parcels addressed to Defendant were placed together with five other unrelated parcels and sniffed by "Sandor," a narcotics detection dog utilized by the Niagara Frontier Transit Authority ("NFTA"). According to Agent Gerace's Affidavit, Sandor is trained to detect the odors of cocaine, heroine, marijuana and methamphetamine. Sandor positively alerted on the six parcels addressed to Defendant, and not on the other five parcels. The six parcels were detained by D.E.A., and the parcel search warrant described above was issued by Magistrate Judge Maxwell at approximately 9:14 a.m. on February 4, 1992. Item 9, Exh. B.

Upon obtaining the search warrant for the parcels, at approximately 9:30 a.m. on the same date, one of the six parcels was opened and found to contain approximately 60 pounds (three twenty-pound bricks) of marijuana. The package was then resealed for delivery, and application was made to Magistrate Judge Maxwell for an anticipatory search warrant for the Defendant's residence. The residence search warrant was authorized by Magistrate Judge Maxwell at approximately 10:30 a.m. Item 9, Exh. D. The parcels were then delivered to Defendant's North Davis Street residence by Agent Gerace, who was posing as a UPS driver. The packages were signed for and accepted by Defendant.

Following the delivery and acceptance of the packages, surveillance was maintained by D.E.A. in the vicinity of Defendant's North Davis Street residence. During that surveillance, Defendant was observed taking three of the UPS parcels from his residence into the garage. He then drove his car out of the garage, and was stopped in the driveway and placed under arrest by D.E.A. agents. According to the Affidavit of D.E.A. Agent Gene J. Nanna, made in support of the Criminal Complaint filed against Defendant herein (Item 2), three of the UPS parcels (which had their identify-ing labels removed) were "[f]ound in the car ...," Item 9, Exh. E, ¶ 3, and were then seized by the arresting officers. The search warrant for Defendant's residence was then executed, resulting in the seizure of the three remaining UPS parcels, which were found in the kitchen and living room. During the execution of the residence search warrant the officers also found a loaded .38 caliber revolver in Defendant's bedroom, as well as .25 caliber and .9mm handguns in a locked room on the second floor. Following seizure, the six UPS parcels were inventoried. In total, approximately 313 pounds of marijuana were seized from Defendant's car and residence.

On February 19, 1992, Defendant was indicted in a four-count indictment alleging violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 853(a) and 860(a) and 18 U.S.C. § 924(c). In a Notice of Motion and letter dated April 22, 1992, Defendant moved pursuant to Fed.R.Crim.P. 12 and 41 to suppress all evidence derived from the search and seizure of the UPS packages and the search of Defendant's residence.

## DISCUSSION

Nothing presented on the record before me, or at argument, indicates the existence of any factual issues raised by Defendant sufficient to require evidentiary hearings on either the facial adequacy of the search warrants issued for, or the scope of the searches of, the parcels and the premises. Accordingly, I find it appropriate to proceed to a determination of the legal issues dispositive of the instant motion without the need for evidentiary hearings as requested by Defendant.

■ Defendant contends that the canine "sniffs" of the UPS parcels in both San Diego and Buffalo constituted "warrantless seizures (and searches)" under the requirements of the Fourth Amendment. However, the Second Circuit has held that canine sniffing is neither a "search" nor "seizure" for the purposes of the Fourth Amendment's warrant requirements. *United States v. Waltzer*, 682 F.2d 370, 373 (2d Cir.1982), *cert. denied*, 463 U.S.

1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Johnson*, 660 F.2d 21 (2d Cir.1981); *United States v. Bronstein*, 521 F.2d 459 (2d Cir.1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976). As the Court in *United States v. Waltzer* stated: "Canine identification is a non-intrusive, discriminating and ... reliable method of identifying packages containing narcotics. Its use is considerably less offensive to Fourth Amendment values than other methods of policing the transportation of drugs." 682 F.2d at 372–73. While recognizing that a person possesses a Fourth Amendment interest in the contents of personal luggage, *see, e.g., United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Court noted that the issue before it was whether canine sniffing intrudes on that interest:

> We again hold it does not. Odor is extrinsic to the luggage, which is not opened, and the sniffing discloses only contraband, not other items in the bags. The owner is not subjected to the inconvenience and possible humiliation entailed in other less discriminate and more intrusive methods. Sniffing results in virtually no annoyance and rarely even contact with the owner of the bags, unless the scent is positive, in which case, as we hold, probable cause has been established. The only privacy intruded on is thus the secret possession of contraband.

682 F.2d at 373; *see also, Florida v. Royer*, 460 U.S. 491, 505–06, 103 S.Ct. 1319, 1328–29, 75 L.Ed.2d 229 (1983) (positive result of canine sniff of luggage while momentarily detained resulted in justifiable arrest on probable cause); *United States v. Glover*, 957 F.2d 1004, 1013 (2d Cir.1992) (once narcotics dog "hit on" defendant's bags, the police had probable cause to obtain a search warrant).

Further, in holding that law enforcement authorities may temporarily detain personal luggage for exposure to a trained narcotics detection dog on the basis of reasonable suspicion that the luggage contains narcotics, the Supreme Court in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), found that the canine sniff procedure did not constitute a "search" within the meaning of the Fourth Amendment. Indeed, the Court stated that it was "aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." *Id.* at 707, 103 S.Ct. at 2644. Thus, according to the Court, only a showing that defendant or the parcels were improperly or unduly detained prior to the canine sniff procedure raises a Fourth Amendment issue. *Id.* at 708, 103 S.Ct. at 2645. There is no allegation in the instant case that the parcels were unduly detained.

Based on the circumstances presented in the record before me, I find that neither the San Diego nor the Buffalo canine "sniffs" constituted searches or seizures within the meaning of the Fourth Amendment, and that warrants were therefore not required prior to the "sniff" procedures. The applications and affidavits establish that the parcels proceeded from the Delmar postal annex to the UPS Office in San Diego, where they were subjected, without undue detention or delay, to a canine sniff by "Buck," who was trained to detect, among other things, the odors of cocaine and marijuana and was utilized for such purpose by the United States Customs Service. The parcels were then loaded and shipped by UPS to Buffalo, where they were again subjected, without undue detention or delay, to a further canine sniff by "Sandor," who was trained to detect the odors of cocaine, heroine, marijuana and methamphetamine and was utilized for such purpose by the NFTA. I note that the canine sniffing technique "is now sufficiently well-established to make a formal recitation of a police dog's *curriculum vitae* unnecessary in the context of ordinary warrant applications...." *United States v. Watson*, 551 F.Supp. 1123, 1127 (D.D.C. 1982). The Magistrate Judge could reasonably have inferred that the skills of both "Buck" and "Sandor" were sufficiently certified so as to insure the reliability of the positive "hits" on the six UPS parcels.

■ Accordingly, I find that the "positive alerts" by "Buck" and "Sandor," along with the attendant circumstances, established sufficient probable cause for Magistrate Judge Maxwell to issue the warrant to search the contents of the six UPS parcels.

■ As to the warrant for the search of Defendant's residence, Defendant contends that the warrant application lacked probable cause to believe that the items set forth thereon were concealed at his premises. However, a common sense reading of Agent Torre's affidavit sufficiently establishes his experience as a Buffalo police officer assigned to the Buffalo D.E.A. resident office drug task force for the last six years. The Magistrate Judge could reasonably have relied on that experience, as well as the evidence uncovered in the canine sniff at the Buffalo Airport, in finding that probable cause existed to believe that the items set forth on the warrant were concealed at Defendant's premises. *Cf. United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985) (D.E.A. agent's 10-year experience taught him that major drug traffickers frequently maintain cash, drugs, books, ledgers and other documents at their homes).

Accordingly, I find that the warrant to search Defendant's premises was issued by Magistrate Judge Maxwell based on sufficient probable cause to believe that the items described thereon were concealed on those premises.

■ Defendant's final contention is that the D.E.A. agents exceeded the scope of authorization set forth in the residence search warrant. That warrant authorized a search for "quantities of marijuana, cash, books, receipts, notes, ledgers, and other documents and records ..." Specifically, Defendant contends that many items listed on the return of the warrant were outside the warrant's authorization, such as a book on "piloting," a two-door BMW automobile, and three handguns.

It is well established that under certain circumstances the law enforcement officers executing a search warrant may seize evidence in "plain view" not specified in that warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971). The Second Circuit has held that three conditions must be met before the "plain view" doctrine may justify such a seizure:

> First, the initial intrusion by the police officer must be lawful so that he can justify being in a position to make his discovery. Second, the discovery [of evidence] must be inadvertent. Third, the police must have had probable cause to believe that the item seized was evidence of a crime.

*United States v. Moreno*, 897 F.2d 26, 32 (2d Cir.) (citations omitted), *cert. denied* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990). Further, the Supreme Court has recently held that the evidence need not be inadvertently discovered in order for "plain view" justification of the seizure of evidence not authorized by the warrant. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "Thus, after *Horton*, when at least two 'plain view' requirements are satisfied, the seizure of objects without a warrant will be deemed reasonable." *Ruggiero v. Krzeminski*, 928 F.2d 558, 562 (2d Cir.1991).

In the instant case, the items seized from Defendant's residence were discovered during a lawful search authorized by the warrant. When the weapons, ammunition, and other items were discovered, whether inadvertently or not, it was immediately apparent to the agents that these items constituted incriminating evidence of suspected criminal activity. The agents thus had probable cause to believe that the items seized would constitute evidence of such activity. *Cf. Horton v. California*, 496 U.S. at 142, 110 S.Ct. at 2310. Since the search of Defendant's premises was authorized by warrant, the seizure of the items set forth in the return was authorized by the "plain view" doctrine.

■ I also note, as an additional basis for finding that the book on "piloting" was properly seized, that the premises warrant included "books" in the scope of its authorization, and that the agents could reason-

ably have believed that such a book might provide some evidence of Defendant's involvement in drug trafficking activity.

 With regard to the two-door BMW automobile, I agree with the Government that the seizure of the vehicle was not accomplished pursuant to any search warrant but as an instrumentality of the offenses charged against Defendant. As such, it was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4). Any subsequent inventory search of a vehicle held for forfeiture is proper. *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). Furthermore, there is no indication that the Government intends to introduce the automobile as evidence in its case-in-chief.

Accordingly, I find that the D.E.A. agents did not exceed the scope of authorization set forth by Magistrate Maxwell in the premises search warrant.

## CONCLUSION

Based on the foregoing, I recommend that the Court deny in full Defendant's motion to suppress evidence derived from the execution of the search warrants issued by Magistrate Judge Maxwell.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Fed. R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Order and a copy of the Report and Recommenda-tion to the attorneys for the Plaintiff and the Defendants.

So Ordered.

DATED: Buffalo, New York
July 27, 1992