BENTON, J.,
with whom FITZPATRICK, C J., ELDER, and FRANK, JJ., join, dissenting.
As the majority rightly recognizes, the warrant was devoid of probable cause. I agree, therefore, with the majority opinion’s holding that the affidavit was insufficient to support a conclusion that a fair probability existed of finding the pistol in the residence. The same facts that support this holding compel a further conclusion, however, that the warrant failed to satisfy the requirements necessary for the good faith exception as described in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Therefore, I dissent.
When the Supreme Court adopted in Leon an “objective reasonableness” standard for the good faith exception to the exclusionary rule, the Court required “officers to have a reasonable knowledge of what the law prohibits.” 468 U.S. at 919 n. 20, 104 S.Ct. at 3419 n. 20. See, e.g., United States v. King, 227 F.3d 732, 753-54 (6th Cir.2000) (holding that an officer who searched the basement of a duplex did not act with objective reasonableness when the basement area was not mentioned in warrant). In adopting this standard the Supreme Court noted, however, that “it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue.” Leon, 468 U.S. at 925, 104 S.Ct. at 3422. In this case, the resolution of the probable cause issue establishes that the facts in the affidavit provide virtually no basis for believing the pistol would be in the residence.
The Supreme Court held in Leon that an officer does not “manifest objective good faith in relying on a warrant based on an affidavit ‘so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.’ ” *791 468 U.S. at 923, 104 S.Ct. at 3421 (citation omitted). As the Supreme Court noted the magistrate cannot merely ratify “ ‘the bare conclusions of others,’ ” 468 U.S. at 915, 104 S.Ct. at 3416 (citation omitted), and, thus, “[n]othing in [Leon] suggests ... that an officer could obtain a warrant on the basis of a ‘bare bones’ affidavit.” 468 U.S. at 923 n. 24, 104 S.Ct. at 3420 n. 24. Furthermore, the Court held that “a warrant may be so facially deficient ... that the executing officer cannot reasonably presume it to be valid.” Id. at 923, 104 S.Ct. at 3421.
To invoke the good faith exception, the Commonwealth must present evidence to establish the officer’s reliance on this defective warrant was based on “objective reasonableness.” Id. at 924, 104 S.Ct. at 3421. In considering these matters, we review de novo the trial judge’s ultimate conclusion concerning the applicability of the good faith exception to the exclusionary rule. King, 227 F.3d at 753; United States v. Manning, 79 F.3d 212, 221 (1st Cir.1996).
The record in this case fails to establish that the officers acted with objective reasonableness because the timing nexus surrounding the events is so woefully deficient in this affidavit as to be nonexistent. It is beyond dispute that a reasonably trained officer should be familiar with the warrant requirement of a temporal component connecting the events in the affidavit and the warrant. When, upon an examination of the four corners of the affidavit, the omission of any reference to the time of the critical events is so complete that the nexus between them cannot be reasonably inferred, it cannot be said that an officer’s good faith cures the defect. Herrington v. State, 287 Ark. 228, 697 S.W.2d 899, 901 (1985). See also United States v. Huggins, 733 F.Supp. 445, 449 (D.D.C.1990) (holding that the Leon good faith exception is inapplicable where the dates of critical events are not disclosed in the affidavit).
The only date or time reference contained in the affidavit is March 17, 2000, the date of the homicides. In the absence of dates regarding the other critical events alleged in the affida *792 vit, the magistrate and the officers made a number of unsupported assumptions based on speculation, and not facts. For example, without specifying any dates, the affidavit relates that an unidentified suspect told a friend, who was an unidentified informant, that he (the suspect) traded a pistol to Anzualda. The affidavit does not disclose when the suspect had the conversation with the informant. Furthermore, the substance of the conversation does not convey any time frame or other facts which would suggest when the suspect had the conversation. The conversation just as likely occurred a year prior to the date of the affidavit as at any other hypothesized time.
Indeed, the absence of any critical dates and times in the affidavit leaves vague and undisclosed the connection of the “suspect” to the homicides. The affidavit notes only that an individual incarcerated in jail “has become a suspect in the offense in that he has made incriminating statements to at least three persons.” If the individual became a suspect merely because he told the informant and others that he traded a pistol to Anzualda, then nothing in the affidavit links the March 17, 2000 killings and the pistol. Only by assuming that the suspect’s statements suggested he was the killer could the magistrate conclude the transfer of the pistol occurred after March 17, 2000. Such an assumption, however, is grounded in no fact that is recited in the affidavit. Thus, the affidavit renders speculative whether the suspect was present during the homicides, whether he knew the identity of the killer, or whether he implicated himself as the killer. Most significant, the affidavit renders speculative the date or time when the transfer of the pistol occurred. The omission of dates or times renders any connections between the alleged critical events indiscernible from the face of the affidavit and, thus, negates any conclusion that the officials acted with objective reasonableness.
When the staleness or timing nexus is viewed in relation to the nature of the other activity that is alleged in the warrant, it is clear both that the affidavit was facially “so lacking in indicia of probable cause as to render official belief in its *793 existence entirely unreasonable” and that the warrant was so facially deficient that the officer could not have reasonably believed it was valid. In the absence of critical dates and times that would establish the timing nexus, the affidavit required both the magistrate and the officer to speculate as to a nexus between the homicides and the pistol that was the object of the search warrant. The absence of a date or indication of timing nexus bears on these omissions because no reasonable inference can be drawn by a magistrate or reasonably trained officer concerning the relationship of the pistol to the events giving rise to the allegation of a need to obtain the warrant.
Specifically, the lack of any dates or times in the affidavit led to three unsupportable assumptions. First, the lack of a date made it purely speculative when the suspect traded the pistol — whether the suspect transferred the pistol before or after the homicides. Thus, there was no basis to conclude the pistol was used to commit the homicide. Second, the affidavit does not contain even a suggestion of when, if ever, the pistol was seen in the residence or even where the trade occurred. Thus, the information communicated by the suspect does not disclose a reasonable probability that the pistol the suspect traded would be at the residence on September 15, the date the warrant was issued and executed. Finally, the affidavit’s statement of material facts does not even disclose whether the pistol the suspect traded was a “9 millimeter” firearm or was believed to be a weapon capable of discharging “9 millimeter rounds.” This deficiency is directly connected to the affidavit’s failure to provide any critical dates or times because, by failing to allege that the pistol was traded at a time so as to be connected with the homicide, no inferences could be drawn from the four corners of the affidavit about the pistol’s connections to the event.[10]
*794 The omission of critical dates simply does not permit any objectively reasonable officer or magistrate to draw inferences about the recency of the events and, therefore, the nexus requirement became merely a matter of guesswork and supposition. Simply put, the absence of times and dates renders these critical events mere speculative assumptions. These leaps of logic negate any suggestion of “objective reasonableness” and are based upon suppositions that no reasonable officer or magistrate could make. For these reasons, the “warrant [was] based on an affidavit ‘so lacking in indicia of probable cause as to render official belief in its existence as entirely unreasonable.’ ” Leon, 468 U.S. at 923, 104 S.Ct. at 3421 (citation omitted). I would hold, therefore, that the circuit court erred in refusing to suppress the evidence.

. In addition to failing the nexus requirement, this third assumption also graphically demonstrates the warrant’s failure to satisfy both the Fourth Amendment and the statutory warrant requirement of specificity. See Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038-39, 29 L.Ed.2d 564 (1971) (holding that the Fourth Amendment *794 "requir[es] a 'particular description’ of the thing to be seized"). See also Code § 19.2-53; Derr v. Commonwealth, 6 Va.App. 215, 221, 368 S.E.2d 916, 919 (1988) (holding that a seizable item must be “evidence of or an instrumentality of a crime”).