THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ANNIE B. REED, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES EDWARD HOPKINS, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHNNIE MOSLEY, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JARVIS GRANT, Appellee.

Third District   Nos. 3—89—0759 through 3—89—0762 cons.

Opinion filed August 31, 1990.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Jack Schwartz, of Rock Island, for appellee Annie B. Reed.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellee James E. Hopkins.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellees Johnnie Mosley and Jarvis Grant.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

This appeal involves four defendants who were arrested as the result of a police drug raid on a public tavern in Rock Island, Illinois, on April 8, 1989. The raid occurred pursuant to a search warrant which permitted the police to search everyone in the Explosive Ten Motorcycle Club for drug-related evidence. The trial court found that the search warrant, which permitted the officers to search everyone in a public tavern, was too open-ended, thus violating the defendants' fourth amendment rights. Accordingly, the trial court granted the defendants' motions to suppress. We affirm.

The search warrant issued for the Explosive Ten Motorcycle Club was prepared by the State's Attorney of Rock Island County, Marshall E. Douglas, and was based on the affidavit of Rock Island police officer Charles Hauman. The affidavit of Officer Hauman provided in pertinent part:

"1. That Hauman had just set up a 'controlled buy' where a confidential informant was given money, went into the tavern and allegedly bought a substance purported to be cocaine from the bartender.

2. That the informant claimed to have purchased cocaine in the tavern on six or more occasions in the previous forty-five days. That the informant claimed that a person named Willie E. Harrington had sold the drugs in the controlled buy but also stated that other persons in the tavern are supplied with cocaine packets from a source inside the bar and will sell them to persons who come into the bar and request cocaine.

3. That the informant and other police officers stated that the upstairs apartment was used to prepare cocaine for sale or distribution.

4. That Hauman believed that cocaine, records and processing equipment could be found in the tavern and in the upstairs rear apartment."

A search warrant was then issued which alleged the following:

"Willie E. Harrington and other persons present in the public bar of the Explosive Ten Motorcycle club now unlawfully pos-

sess a quantity of cocaine, records of drug or narcotic transactions, equipment and materials for packaging and processing cocaine and funds derived from the sale or transfer or trafficing [*sic*] in controlled substances specifically cocaine."

At the hearing on the motion to suppress, Officer Hauman testified that he and several other officers executed the search warrant at approximately 10 p.m. The four defendants in the instant case were the only persons arrested as a result of the police raid. Defendant James Hopkins was charged with unlawful possession of less than 15 grams of cocaine and unlawful possession of more than 2.5 but less than 10 grams of cannabis. Hopkins testified that he arrived at the club approximately five minutes before the police entered and was sitting at a table in the bar. Defendant Johnnie Mosley was charged with unlawful possession of less than 15 grams of cocaine. Mosley testified that he arrived at the club on April 8 between 9:30 and 9:45 p.m. and was in the bathroom at the time that the search warrant was executed. Defendant Jarvis Grant was charged with unlawful possession of less than 15 grams of cocaine and unlawful intent to deliver less than one gram of cocaine. Jarvis testified that he had just walked in the door of the club when the police entered to execute the search warrant. Defendant Annie Reed was charged with unlawful possession of less than 15 grams of cocaine and unlawful intent to deliver more than one gram but less than 15 grams of cocaine. Rock Island police officer Glen Schamp testified that when he entered the club Reed was standing alone behind the bar at the south end. Several witnesses for defendant Reed testified that Reed was standing by the south end of the bar but was not behind the bar at the time the police entered.

Subsequent to the evidentiary hearing, the trial judge issued a written opinion granting the motion to suppress, finding that the search warrant did not specifically authorize the search of the defendants and that "the use of the evidence obtained under these circumstances would make a mockery of the Fourth Amendment to the Constitution."

On appeal, the State raises three arguments: (1) the search warrant and accompanying affidavit described the persons to be searched as completely as possible, thereby establishing probable cause to search all individuals at the public tavern; (2) that the search warrant at a minimum established probable cause to search defendant Reed since the police had reason to believe that Reed was an employee of the tavern because she was standing behind the bar; and (3) assuming, *arguendo*, that the search warrant was invalid, the good-faith ex-

ception to the fourth amendment's exclusionary rule precluded suppression of the evidence seized from the defendants. We find no merit to the State's arguments.

It is well settled that "open ended" or "general" warrants are constitutionally prohibited. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338.) The search warrant must be closed or specific to the extent that the executing officer is left with no doubt or discretion as to what or who is to be searched and there must be probable cause to search every person covered by the warrant. (*People v. Curry* (1981), 100 Ill. App. 3d 405.) In the present action the search warrant mentioned only one specific name and then encompassed all "other persons present in a public bar." Notably, Officer Hauman testified that he had a list of people that the police were to look for in the tavern, but that he did not submit the list or any reference to it in his affidavit. Under these circumstances, we find that the search warrant was defectively open-ended. The search warrant authorized the search of every person in the general population who happened to visit the Explosive Ten Motorcycle Club at 10 p.m. on Saturday, April 8, 1989.

Notwithstanding, the State attempts to argue that a warrant authorizing the search of all persons found in a specifically described place is not *per se* defective. This case, however, does not present the unusual situation where there would inherently be probable cause to search every person at a specific location because there is reason to believe every person there is involved in criminal activity. An example of when such a situation would arise would be an illegal dice game occurring in a specifically defined nonpublic place such as a manhole or barn. (2 W. LaFave, Search and Seizure §4.5(e), at 230-31 (2d ed. 1987).) Conversely, the warrant in this case involved the search of "all persons" in a public place during the normal course of business and was unconstitutionally overbroad.

The State additionally maintains that the warrant in this case was, at a minimum, sufficient to search defendant Annie Reed because the police reasonably believed that she was an employee of the tavern. This belief was premised on Officer Schamp's testimony that when he entered the bar, Reed was standing alone behind the bar at the south end. The State claims that the search warrant established probable cause to search all bartenders and employees of the club because the only person named in the search warrant (Willie Harrington) was a bartender and that Officer Hauman's affidavit stated that cocaine had been purchased from persons present at the tavern six or more times during the past 45 days.

Initially, it is important to point out that Annie Reed was not an employee of the Explosive Ten Motorcycle Club. Thus, the police were mistaken in their belief. Further, Reed's location at the time the police raid occurred is disputed. Two witnesses testified that Reed was not standing behind the bar when the police entered as Officer Schamp had testified. The trial judge was in the best position to determine the credibility of these witnesses. Most importantly, there was nothing in the affidavit which indicated that any employee, other than Willie Harrington, had engaged in the sale of narcotics. Consequently, the search warrant and accompanying affidavit were not specific enough to justify searching all employees of the tavern and the State's argument must fail.

■ Finally, the State argues that even if the warrant and subsequent search violated the defendants' ·fourth amendment rights, the evidence should not have been suppressed because the officers who executed the warrant acted in "good-faith" reliance on the warrant. (*United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.) The good-faith exception to the exclusionary rule is inapplicable to the case at bar for two reasons. First, the good-faith exception does not apply to a search warrant that is based on a "bare bones" affidavit. (*United States v. Baxter* (6th Cir. 1989), 889 F.2d 731.) In the present action, none of the defendants in question were named or otherwise described or identified in the affidavit. Second, the officers who executed the warrant cannot claim good faith because the search warrant was so facially overbroad that they could not reasonably believe that it was valid. (*United States v. Leon* (1984), 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421.) In fact, Officer Hauman testified that in his 16 years on the police force, he had never known of a raid or search of this type where members of the general public were searched because they happened to be in a specified public place.

In conclusion, the trial court did not abuse its discretion in granting the defendants' suppression motions.

Affirmed.

SCOTT and STOUDER, JJ., concur.