UNITED STATES of America

v.

Michael CORRIGAN.

No. 3:90–00204.

United States District Court,
M.D. Tennessee,
Nashville Division.

· Dec. 7, 1992.

Robert J. Washko, Asst. U.S. Atty., Nashville, TN, for plaintiff.

Thomas W. Watson, Asst. Federal Public Defender, Nashville, TN, for defendant.

## OPINION AND ORDER

JOHN T. NIXON, Chief Judge.

At a hearing on November 30, 1992, the government argued that the Court should reconsider its Order entered August 28, 1992, and permit the government to introduce into evidence a pipe bomb defendant allegedly possessed.

For the reasons set forth below, the Court hereby adheres to its prior ruling

**568**

granting defendant's Motion to Suppress evidence of the pipe bomb.

## BACKGROUND

On March 9, 1990, Officer Sulfridge of the Metropolitan Nashville Police Department applied for a search warrant to search defendant's residence for a pipe bomb. In his affidavit in support of the warrant, Officer Sulfridge referred to a conversation that he secretly taped, in which defendant allegedly mentioned having a pipe bomb in the barn behind his house, and allegedly offered to pay Officer Sulfridge to collect a gambling debt from another man and to assault him in the process. Officer Sulfridge obtained the warrant, and on March 9, 1990, searched the premises indicated, and found a pipe bomb.

At a hearing before this Court on August 24, 1992, defendant Corrigan moved to suppress material seized during the search of his residence alleging that the search warrant was executed without probable cause. Defendant argued that the police officer failed to include in his affidavit any reference to the date he received the information which formed the basis of his warrant request, and that this omission violated the defendant's Fourth Amendment rights to be protected against searches based upon stale information.

The government conceded that a search warrant based on potentially stale evidence could not support a finding of probable cause. The government claimed, however, that the warrant was protected by the good-faith exception to the exclusionary rule, since the officer believed he was acting on a valid search warrant and within the bounds of the law. The defendant argued that the good-faith exception did not apply under the circumstances of the instant case, and that the fruits of the search were inadmissible.

The Court found in favor of the defendant, and on August 28, 1992, entered an Order granting defendant's Motion to Suppress. It is this Order the government requested that the Court reconsider at oral argument on November 30, 1992.

## DISCUSSION

### Probable Cause

 A valid search warrant may only be issued upon an affidavit or complaint which sets forth facts establishing probable cause. U.S. Const. amend IV; Fed. R.Crim.P. 4(a). To demonstrate probable cause, an affidavit must set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime. *Berger v. New York*, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040, 1050 (1967); *United States v. Laws*, 808 F.2d 92, 94 (D.C.Cir. 1986) (footnote omitted).

 In other words, a finding of probable cause requires a determination that certain objects can currently be found at a particularly described place. 1 W. Ringel, *Searches & Seizures, Arrests and Confessions*, § 4.2(a) at 4–13 (1988). "[I]f the information is too old, it is considered stale and probable cause no longer exists." *United States v. Rakowski*, 714 F.Supp. 1324, 1329 (D.Vt.1987) (citing *Sgro v. United States*, 287 U.S. 206, 210–212, 53 S.Ct. 138, 140–41, 77 L.Ed. 260 (1932)). Therefore, the dates of the occurrences alleged to create probable cause must be stated in the affidavit as a means of allowing the judicial officer to determine if the information is stale. *United States v. Boyd*, 422 F.2d 791, 792 (6th Cir.1970).

At the hearing on August 24, 1992, defendant argued that the age of the information could not be determined because the affiant neglected to indicate the date the alleged conversation occurred. Without this information, he maintained, the magistrate issuing the warrant could not have determined whether the information was stale, and thus executed the warrant without probable cause.[1] As the First Cir-

---

**1.** *See United States v. Turner*, 713 F.Supp. 714, 719–20 (D.Vt.1989), citing *Rosencranz v. United States*, 356 F.2d 310, 316–17 (1st Cir.1966) (information stale where affidavit contained neither the date of the informant's observation nor the date the information was given to the affi-

cuit stated in *Rosencranz*, the information could have been obtained "a day, a week, or months before the date of the affidavit."

Some courts, however, have held that search warrants that failed to include the date, could be found valid on grounds that one could infer that the information was fresh from the language and totality of the affidavit, from the inclusion, for example, of words such as "now" and "recently".[2] While the government argued in its written Response to Motion to Suppress that one could infer freshness from the officer's actions if not from his words,[3] the government has not pursued the issue of the warrant's validity since, preferring instead to invoke the good-faith defense.

### Good Faith Exception

■ The government contends that even though the warrant was issued without probable cause, the search is valid under the "good faith" exception articulated in *United States v. Leon*, 468 U.S. 897, 918–21, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme Court held that the exclusionary rule would not apply where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon* 468 U.S. at 920, 104 S.Ct at 3419. In other words, *Leon* provides for an exception where police officers obtain evidence while acting in reasonable reliance on a search warrant ultimately found to be invalid. Thus, while the exclusionary rule is meant to deter some police misconduct, the holding in *Leon* acts to save evidence otherwise unconstitutional due to a judge's or magistrate's error, in the belief that exclusion in such a situation could have no deterrent effect on future police conduct.[4]

At the hearing on August 24, 1992, the government argued that Officer Sulfridge acted with good faith, and that the absence of the date of the conversation was a result of oversight, not an example of intentional and willful police misconduct. More specifically, the government attempted to demonstrate the officer's good faith by referring the Court to: 1) the officer's efforts in attaining and executing the search warrant; 2) the fact that the officer gave the date of the conversation to a different judge when applying for the arrest warrant, thus suggesting his intention to include the date in his application for the search warrant as well; and 3) the officer's own testimony, on August 24, 1992, that he knew of the requirement to include the date of the alleged conversation, but that in the commotion that ensued upon arrest, he simply forgot to include it.[5] Further, the

---

ant); *United States v. Elliott*, 576 F.Supp. 1579, 1581 (S.D.Ohio 1984) (information stale where affiant neglected to include the date of the anonymous complaints or the dates of his surveillance); *Gonzales v. State*, 577 S.W.2d 226 (Tex. Crim.App.1979), *cert. denied*, 444 U.S. 853, 100 S.Ct. 109, 62 L.Ed.2d 71 (1979) (information stale where affidavit does not state when the officers received the information from their informer nor when the informer obtained his information).

2. *United States v. Huggins*, 733 F.Supp. 445, 448 n. 3 (D.D.C.1990), citing *Herrington v. State* 287 Ark. 228, 697 S.W.2d 899 (1985). *See also United States v. Turner, supra.*

3. The government suggested that one could infer from the dangerousness of the situation—a man in possession of a lethal weapon with a declared intent to injure someone—that the officer would have taken immediate action to obtain a search warrant to defuse the danger. The defendant countered this argument, in its written Reply to Government's Response to Motion to Suppress, by noting that there was an ongoing investigation of another matter involving the defendant and that the officer may have refrained from seeking a search warrant immediately to avoid interfering.

4. "Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law, and penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon* at 898, 104 S.Ct. at 3408.

5. The officer testified that defendant denied him the right to search the premises at the time of the arrest, and that he therefore had to go into another county for a search warrant. In his efforts to obtain the search warrant, he stated that he was under pressure since it was late in the evening and this second magistrate had a previous engagement he had to attend. Furthermore, the officer noted that on the standard affidavit form for searches there is no space for the date which there was on the arrest form he had completed earlier, and that due to the rush and this type of blank form, he forgot to include the date. The officer also testified that he real-

government cited *United States v. Lamon,* 930 F.2d 1183 (7th Cir.1991), and *United States v. Anderson,* 851 F.2d 727 (4th Cir. 1988), cases where the courts upheld searches in spite of warrants that failed to include the date, on the basis of *Leon*'s good-faith exception to the exclusionary rule.[6]

The defendant countered the government's reliance on *Leon* by bringing attention to the fact that the *Leon* Court's good-faith inquiry is confined to an objective standard:

> We emphasize that the standard of reasonableness we adopt is an objective one. Many objections to a good faith exception assume that the exception will turn on the subjective good faith of the officers.... The objective standard we adopt requires officers to have a reasonable knowledge of what the law prohibits.

*Leon,* 468 U.S. at 920 n. 20, 104 S.Ct. at 3419 n. 20. The defendant argued that the good faith of the officer, and the circumstances leading to his unintentional omission of the date, are not at issue here. Instead, the defendant noted, *Leon* demands that a police officer's reliance upon a search warrant be objectively reasonable, and any reasonably well-trained officer would have recognized that a search based upon a warrant lacking a date could be suppressed, due to the impossibility of determining the age of the information.

In its Order of August 28, 1992, this Court found that under *Leon* the issue before it was whether the warrant was so faulty in its omission of any reference to the date of the alleged conversation, that any reasonably well-trained police officer would not have relied on it, and not whether the officer in this case acted in good faith. The Court then determined that the government failed to meet its burden of proof that the police officer's reliance was objective, and not based on his own personal knowledge of the circumstances.

The officer's testimony that he was aware of his duty to include the date, that he only realized his mistake three days later, and that he knew that without the date the warrant was not reliable and the fruits of the search were subject to suppression, indicated to the Court that the officer did not read and follow the letter of the warrant, but instead relied on his own knowledge of the situation. The efforts the officer made in obtaining the search warrant, his inclusion of the date in the affidavit for the arrest warrant, and the fact that he felt he was under time pressure, did not relieve the officer of his burden to include the date in the affidavit for the search warrant.[7] Thus, while the Court found that the government's arguments may have indicated the officer's subjective good faith, they did not demonstrate his objective good faith.

This Court then turned to the *Leon* decision which provides that suppression remains an appropriate remedy and the good-faith rule does not apply in four paradigmatic situations:

---

ized his mistake three days later, at which point he knew *that the search could be suppressed.*

**6.** Defendant noted that in *Anderson,* although the affidavit contained no specific date, the court was able to find a time reference, namely that the officer was contacted by one of the informants only seventy-two hours before he sought the warrant. *Id.* at 729–30. In *Lamon,* although the affidavit mentioned no exact date, the Court upheld the warrant on the basis that the affidavit contained information that the defendant had "recently" sold cocaine, and more particularly, that the informant said defendant had sold cocaine within the past seventy-two hours. *Id.* at 1185, 1188.

**7.** The government referred the Court to *United States v. Ramos,* 923 F.2d 1346 (9th Cir.1991),

where the Ninth circuit held that "the time pressure under which an officer is operating when she prepares a warrant application may bear on whether an officer could rely in good faith on a warrant issued despite an omission in the affidavit". *Id.* at 1355 n. 18 (citation omitted). The reference to *Ramos* is misplaced, for in the instant case the officer who prepared the warrant application and the officer who relied upon the warrant were one and the same. Also, defendant contends that the government's argument with respect to time pressure is weakened, if not totally negated, by the fact that the defendant was already in custody at the time the officer applied for the search warrant, and thus he raised no immediate threat to society.

[First,] ... if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). [Second,] ... in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–327, 99 S.Ct. 2319, 2324–2325, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well trained officer should rely on the warrant. [Third,] [n]or would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. [590], at 610–611, 95 S.Ct. [2254], at 2265–2266, 45 L.Ed.2d 416 (1975).... Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. Cf. *Massachusetts v. Sheppard*, 468 U.S. [981], at 988–991, 104 S.Ct. [3424], at 3428–3430, [82 L.Ed.2d 737].

*Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. In the Order of August 28, 1992, this Court found that in the instant case, the magistrate was misled by information in the affidavit that the officer should have known was at the least incomplete; that the affidavit lacked probable cause due to its failure to make any reference to time, such that no officer could manifest objective good faith in relying on it; and that the warrant was so facially deficient that Officer Sulfridge could not reasonably presume it to be valid.

At oral argument on November 30, 1992, the government presented two new theories to the Court. First, the government suggested that while the police officer may have been negligent, the magistrate also committed an error in failing to notice the police officer's oversight. Thus, the government argued, *Leon* does in fact apply to the instant case, with respect to the magistrate's good faith error, and the exclusionary rule should not apply. The Court would note, however, that if it were to find in favor of the government under such circumstances, then every instance of police neglect or misconduct could be ignored by making an exception for the judge or magistrate's resulting error. This is precisely the scenario the Supreme Court thought to avoid when it ruled that suppression remains a remedy in the paradigmatic situation where the issuing magistrate "wholly abandoned his judicial role":

> [T]he courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." A magistrate failing to "manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application" and who acts instead as "an adjunct law enforcement officer" cannot provide valid authorization for an otherwise unconstitutional search.

*Leon* at 914, 104 S.Ct. at 3416 (citations omitted).[8]

Second, the government contended that this Court read *Leon* too narrowly in reaching its earlier decision. The government argued that *United States v. Savoca*, 761 F.2d 292 (6th Cir.1985)—a case involving the search of a motel room and an affidavit defective as to place and date—was exactly on point and should control the matter

---

**8.** In his written Reply to Government's Response to Motion to Suppress, the defendant contended that a distinction should be drawn between those cases in which complete information is provided to a magistrate who then makes an erroneous determination that the information is not stale and issues a warrant, and those situations in which the officer fails to provide information to the magistrate from which the magistrate may determine whether or not the information is stale. This Court believes such a distinction is appropriate and goes to the heart of the *Leon* ruling, and would note that *Leon*'s good-faith exception to the exclusionary rule addresses the former situation, while the instant case is an example of the latter.

herein.[9] In rehearing *Savoca*, a Sixth Circuit majority vacated its earlier opinion, reported at 739 F.2d 220 (6th Cir.1984), in which it ruled that the district court erred in not suppressing certain evidence. Upon careful analysis of *Savoca*, this Court finds that the majority meticulously limited the *Savoca* holding to its own specific set of facts, and that it does not control this case:

> [A] reasonably well-trained officer could conclude on the particular facts presented here that the affidavit stated enough information to create probable cause and to remove this case from the operation of precedents such as [*U.S. v.*] *Hatcher* [473 F.2d 321 (6th Cir.1973)].... Although we continue to believe that these inferences are not available to support probable cause in this case ... we conclude that a reasonably well-trained officer could have reached the opposite conclusion.

*Savoca*, 761 F.2d at 297–98 (citations and footnote omitted).

■ The Sixth Circuit majority concluded that probable cause did not support the search of the motel room, but that in light of *Leon*, the suppression was not warranted.[10] In the instant case, however, not only does this Court believe that the warrant failed to provide probable cause to search defendant Corrigan's barn, but Officer Sulfridge himself testified at the hearing on August 24, 1992, that no reasonably well-trained officer could have reached the opposite conclusion. Officer Sulfridge testified that as soon as he realized the affidavit and warrant did not contain a date, he knew the evidence could be suppressed, and any reasonably well-trained officer would have known the same.

## CONCLUSION

The Court reiterates its earlier finding that the warrant was not valid on its face, that no reasonably well-trained officer would have relied on it, and that Officer Sulfridge was not acting in objective good faith when he searched defendant's premises. *Leon* controls the case herein, and the purpose behind *Leon* is to ensure that police officers not be punished for mistakes of judges or magistrates, and that the suppression of evidence be avoided in situations where there would be no deterrent effect upon police conduct. The instant case does not fit neatly under either of these *Leon* scenarios. The warrant at issue is not faulty due to any error on the part of the magistrate, but rather due to the negligence of the police officer applying for the warrant, and *Leon* does not excuse a police officer's reliance on a warrant which he himself, however unintentionally, caused to be faulty.

In light of the foregoing, the Court finds that the warrant was so lacking in probable cause as to fail to meet the good-faith exception as articulated in *Leon*. Accordingly, defendant's motion to suppress is GRANTED.

9. Upon arresting two alleged bank robbers, FBI agents secured a search warrant which authorized a search of a motel room for "weapons, disguises, U.S. currency, and ficticious [sic] identification." *Savoca*, 739 F.2d at 222. In its opinion following the rehearing, the Sixth Circuit reiterated that the defect in the affidavit was that "it only tenuously connected the place to be searched with two persons for whom arrest warrants were outstanding. It failed to describe the relationship of the persons to the premises and it did not state how recently the bank robberies had occurred." *Savoca*, 761 F.2d at 297.

10. Judge Jones dissented, agreeing with the majority that the case involved an incorrect probable cause determination, but disagreeing with the majority's characterization of *Leon*. Further, he disagreed that *Leon*'s good faith exception could be applied to cure the defect at issue, because "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Savoca*, 761 F.2d at 299–300 (Jones, J., dissenting).