641 A.2d 214

William Maurice MINOR

v.

STATE of Maryland.

No. 87 Sept. Term, 1993.

Court of Appeals of Maryland.

May 13, 1994.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, all on brief), Baltimore, for appellant.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ., and MARVIN H.

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**710**

SMITH and CHARLES E. ORTH, Jr.**, JJ. (retired), Specially Assigned.

RODOWSKY, Judge.

In this case we apply the good faith exception to the exclusionary rule applicable to Fourth Amendment violations.

On July 10, 1992, Sgt. Shelley W. Clemens of the Maryland State Police applied to a judge of the Circuit Court for Anne Arundel County for a warrant to search residential premises in that county. Her supporting affidavit set forth the following as the basis for probable cause to believe that theft statutes were being violated at that location.

Sergeant Clemens was college trained in, and had fourteen years of experience in, police work, including eight years as a criminal investigator. She was assigned to the Annapolis Investigation Section of the Maryland State Police. She knew that thieves of manufactured property often remove serial numbers.

In further support of the application affiant Clemens deposed and said:

"That during the week of July 5, 1992 information was received from a confidential source regarding stolen motorcycles. The following information was received:

"1. A 1992 Honda CBR 600 red motorcycle was stolen from an Annapolis address across from the YMCA and is now being stored in a shed located at a residence in Harwood, Maryland. (Contact with Annapolis PD confirmed that a 1992 red Honda CBR 600 Motorcycle was reported stolen on 6–27–92 from 26 Woodward Ct., Annapolis, MD.)

"2. The residence was described as a white single story dwelling located off the left side of Sands Road in Harwood, MD. Behind the house is a pen which houses several dogs. Parked on the side of the house is a Ford Bronco II. Also

---

** ORTH, J., participated in the hearing and conference of this opinion but died prior to its adoption by the Court.

parked in the yard are two junked 280Z Datsuns, one is green in color, the other is maroon. Behind the house is a grayish blue trailer with a deck on the front. To the right of the trailer is a white/gray storage shed in which the stolen 1992 CBR is located. (This location was visited and previous information was confirmed.)

"3. Living on the premises is Greg Vernell Tyler, B/M, approximately 19–20 years old; Ronald (last name unknown), B/M, 20–21 years old; and Billy (last name unknown), B/M, approximately 20 years old. (A check through the motor vehicle administration revealed that Gregory Vernell Tyler Jr, B/M, DOB: 5–5–72, resides at 4766 Sands road, Harwood, MD 20776.)"

The affidavit did not present any facts concerning the reliability of the informant or how the informant had acquired the information conveyed to the police.

The judge signed the warrant. It included authorization to search for "serial plates and other small parts that could be removed from a motorcycle." When the warrant was executed the motorcycle was not found, but six rocks of crack cocaine, one marijuana cigarette, one envelope of "greenish vegetable matter," one plastic box of razor blades, and one triple beam balance scale were found in a bedroom of the house occupied by the petitioner, William Maurice Minor (Minor).

Minor was charged with possession of a controlled dangerous substance with intent to distribute and with two counts of simple possession. He moved to suppress the fruits of the search for want of probable cause to support the warrant.

At the suppression hearing Sgt. Clemens testified that she had not approached any other judge to issue the warrant, and that she had not discussed the warrant with the issuing judge. She stated that, in preparing her affidavit, she had included only as much information as she thought was necessary, because she did not want to jeopardize the confidentiality of her informant.

Minor's motion to suppress was denied. In a written opinion, the suppression-hearing judge concluded that the warrant-issuing judge

"did not have a substantial basis to conclude that the issuance of the warrant was proper. While the informant in the case before this Court has provided information concerning a stolen motorcycle, there is nothing beyond a 'bare conclusion' to place it at 4766 Sands Road. Additionally, the description of the property and those persons living on it does nothing to further the argument that contraband or evidence of a crime will be found at that location. The application is noticeably void of information concerning prior related criminal activity of the suspects, the veracity of the informant, and independent corroboration of suspected criminal activity."

Nevertheless, the evidence was not suppressed. Applying *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the court found that "[t]he officers conducting the search of 4766 Sands Road, Harwood, Maryland had, as required, an objectively reasonable basis for believing that the search was authorized by a valid warrant."

Minor was tried under a not guilty statement of facts, convicted on the two simple possession counts, and sentenced, essentially to probation. He appealed, and this Court, on its own motion, issued the writ of certiorari prior to consideration of the matter by the Court of Special Appeals.

Minor submits that the trial court erred in applying *Leon* to the facts here, because there is an absence of evidence of the reliability of the undisclosed informant and of the informant's basis of knowledge and, but for the informant's statement, there is no nexus between the crime and the place to be searched.

*Leon* held that the federal exclusionary rule does not apply to evidence obtained under a search warrant that has later been found to be deficient, so long as the law enforcement officers acted in objectively reasonable reliance on the warrant. 468 U.S. at 913, 104 S.Ct. at 3415. This is because the

exclusionary rule is designed to deter police misconduct, rather than to punish the errors of neutral magistrates. *Leon*'s holding is also based upon the "great deference" that is afforded search warrants issued by neutral magistrates. *Id.* at 914, 104 S.Ct. at 3416. Consequently, when police officers have acted in good faith pursuant to a search warrant that is later invalidated, excluding evidence would "only rarely" serve the purposes of the exclusionary rule. *Id.* at 926, 104 S.Ct. at 3422.

There are limits, however, to the deference afforded warrants. *Leon* listed four sets of circumstances under which suppression remains an appropriate remedy: (1) when the judicial officer issuing the warrant was misled by an affidavit that "the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) when the magistrate "wholly abandoned his judicial role;" (3) when "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' " or (4) when the warrant is facially deficient (*e.g.*, failing to particularize the place to be searched). *Id.* at 923, 104 S.Ct. at 3420–21. Minor contends that his case falls within the third of the exceptions as set forth above.

The opinion in *Leon* further explained the exception on which Minor relies, saying:

> "Accordingly, our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered."

*Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23. In summing up its holding, the Court said that the third of the exceptions to *Leon*'s good faith rule arises if the officers "could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. at 3422.

*Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), decided with *Leon,* ruled that *Leon* ap-

plied where the defect in a search warrant was the failure fully to modify a preprinted form application in order to make it appropriate for the case in which it was used. The Court commented:

"[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested. In Massachusetts, as in most jurisdictions, the determinations of a judge acting within his jurisdiction, even if erroneous, are valid and binding until they are set aside under some recognized procedure."

468 U.S. at 989–90, 104 S.Ct. at 3428.

The Court returned to the *Leon* rule when considering an immunity defense asserted to an action under 42 U.S.C. § 1983 arising out of an arrest on a warrant, the supporting affidavit for which failed to establish probable cause. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), held "that the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest." *Id.* at 344, 106 S.Ct. at 1098 (footnote omitted). *Malley* distilled the holding of the earlier case and applied it in the following fashion:

"In *Leon,* we stated that 'our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.' 468 U.S. at 922 n. 23 [104 S.Ct. at 3420 n. 23]. The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."

475 U.S. at 345, 106 S.Ct. at 1098 (footnote omitted).

When this Court applied *Leon* in *Connelly v. State,* 322 Md. 719, 730, 589 A.2d 958, 964 (1991), we similarly distilled its holding by quoting the same language from *Leon* as was quoted in *Malley.*

██ Although cases that raise the *Leon* good faith issue are to be decided on their specific facts, there is at least one common denominator among them. Implicitly these cases present a degree of tension between the role of the police officer who seeks the warrant and that of the issuing judge. A test that looks to whether the police officer knew that the warrant issued by the judge should not have been issued would seem to place the police officer in the position of reviewing the decision made by the judge, but that is not what *Leon* requires. First, the test is an objective, legal one, and is applied by the court that is asked to suppress. *Connelly*, 322 Md. at 736, 589 A.2d at 967, reversed a remand that had been ordered by *Connelly v. State*, 82 Md.App. 358, 571 A.2d 881 (1990), and at which good faith as a matter of fact would have been determined. Further, as *Malley* has elucidated *Leon*, the question is whether a reasonably well-trained officer would have known "that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345, 106 S.Ct. at 1098 (footnote omitted). Thus, the officer has no duty to second guess the judge; the officer's duty is to withhold from presentation an application for a warrant that a well-trained officer would know failed to establish probable cause.

██ In the case before us we shall assume that the suppression-hearing judge correctly concluded that Sgt. Clemens's affidavit failed to demonstrate probable cause. On the *Leon* issue, however, the absence of averments evidencing reliability of the confidential informant on prior occasions and of the informant's basis of knowledge is not necessarily fatal. It is apparent that the affidavit attempts to present probable cause under the "totality of the circumstances" rule of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates*, a police investigation focused on the defendant because of a tip from an anonymous source who predicted certain travel by Gates on an alleged drug run. Principally because Gates, while under surveillance, behaved in the manner predicted by the informant, there was probable cause to

believe that he was engaged in illegal drug activity as the informant claimed. *Id.* at 246, 103 S.Ct. at 2336.

■ Similarly, in the instant matter, the fact that there is no independent corroboration of the informant's statement that the particular stolen motorcycle was indeed at 4766 Sands Road does not foreclose probable cause and, *a fortiori*, does not foreclose applying the good faith rule.[1] Whether Sgt. Clemens could have held an objectively reasonable belief that she had satisfied the requirements of *Gates* rests principally on the parenthetical statements in her affidavit that are intended to demonstrate her verification that the informant knew that a motorcycle recently had been stolen, knew the approximate location from which the motorcycle had been stolen, and knew the precise year, make, model, and color of the motorcycle.

■ Minor seeks to minimize the significance of Sgt. Clemens's investigatory confirmation of the accuracy of these details by arguing that the information could well be general knowledge in the community or could be a matter that was publicized by the media. The issuing judge was not required to minimize that information; rather, it could be given the significance that the judge considered appropriate. *Gates* teaches that

> "[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

462 U.S. at 238, 103 S.Ct. at 2332.

■ From the standpoint of our independent review, we recognize that Annapolis is a cosmopolitan community in

---

1. If the police were required independently to verify in some way the presence of the motorcycle at the specified address, then the police in *Gates* would have been required to verify independently that Gates was carrying drugs.

which there are drug users who supply their habits through theft. A reasonably well-trained police officer could anticipate that an issuing judge, making a practical, common sense decision under all the circumstances, could conclude that the theft of a motorcycle in the Annapolis area would not send shock waves through the community. Indeed, Sgt. Clemens could reasonably anticipate that a judge could conclude that an anonymous informant, who knew the amount of confirmed detail about a crime of no particular notoriety that was known by this informant, might well be correct in other, unconfirmed respects, so that there was probable cause to believe the information about the location of the stolen motorcycle. The test under *Leon* is not whether there was probable cause, but whether "a reasonably well trained officer would have known that the search was illegal" despite the authorization from the judge. 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. The affidavit here does not fail that test.

Minor also contends that the warrant-issuing judge could not consider that the theft of the motorcycle "from an Annapolis address across from the YMCA" had been confirmed by the reported theft of such a motorcycle from 26 Woodward Court, Annapolis. Manifestly, Sgt. Clemens intended for the warrant-issuing judge to treat the report received from the Annapolis Police Department as confirming the informant's statement describing the time and place of the theft and the property stolen.

The suppression-hearing judge observed that "the affidavit does not contain verification that 26 Woodward Court is 'across from the YMCA' in Annapolis." That observation, however, does not terminate the probable cause analysis. *Dean v. State*, 205 Md. 274, 107 A.2d 88 (1954), dealt with an application to search an automobile, believed to be used in gambling activity. The vehicle's travels over certain named streets were described, but the affidavit did not state that those streets were within Baltimore City, the jurisdiction of the issuing judge. *Dean* held that judges, in considering search warrant applications, may "make use of their 'local familiarity' with the characteristics of a particular neighbor-

hood," and they may add "this knowledge to that disclosed by or inferable from the application." *Id.* at 281, 107 A.2d at 91.

For purposes of our independent review, we take judicial notice of certain facts of Annapolis geography that appear in publications distributed in that community. Standard street maps of Annapolis reflect that the area with which we are concerned lies along the southwesterly side of Truxton Park, abutting Hilltop Lane. Woodward Court is one block southwest of Hilltop Lane. Polk's Annapolis City Directories, beginning with the 1973 edition and continuing through the 1981–82 edition, reflect the existence of a YMCA on the Truxton Park side of Hilltop Lane, near Woodward Court. Telephone directories, however, do not reflect the existence of a YMCA in that area in 1992.

▅▅▅ Although there was a lack of precision in that aspect of Sgt. Clemens's affidavit that undertook to verify the informant's location of the theft by use of the report from the Annapolis Police, the *Leon* principle may still be applied. It was objectively reasonable for Sgt. Clemens to believe that she obtained verification, because it appears that the informant had described the site of the theft by reference to an earlier, but discontinued, use of a building in the neighborhood. Under *Dean,* a warrant-issuing judge is free to use "local familiarity" with the neighborhood in considering an application. Further, a warrant-issuing judge may consider the tendency of many persons to continue to refer to a building by its prior use, even after the use has been discontinued. Thus, Sgt. Clemens did not depart from the standard of a reasonably well-trained police officer by the less-than-precise manner in which she articulated for the warrant-issuing judge what she considered to be investigatory verification of the site of the crime. described by the informant.

Of the decisions from other jurisdictions cited by Minor, *Bradley v. State,* 609 N.E.2d 420 (Ind.1993), deals with facts that are somewhat analogous to the instant matter when addressing the probable cause issue. *Bradley,* however, refuses to apply *Leon* on two grounds, the principal one of which

is the knowing or recklessly false affidavit exception to the *Leon* rule. In *Bradley* the affidavit recited that a "reliable" informant had telephoned the police. The informant knew that an armed robbery had occurred in a room of a motel near a specific street in Indianapolis on the previous Friday or Saturday. The informant said that two, older, white women had been robbed by a black male who had forced his way into their room and displayed a weapon. The informant knew that luggage, jewelry, cash, and credit cards had been stolen and that one of the victims had been injured. All of this information was substantially true. The affiant swore that he had not related details of the crime to the motel staff or to the media, but the affiant could not exclude the victims or hospital staff as sources of the details. The informant identified Bradley as the robber and gave his address. A check of criminal histories revealed that Bradley resided at the specified address and had prior arrests for robbery. The Indiana Supreme Court concluded, after analyzing the circumstances in relation to *Gates*, that probable cause did not exist, for want of a connection between the crime and the defendant or between the stolen property and the premises to be searched. *Id.* at 423. Of significance to the instant matter is that the court, when turning to the *Leon* issue, suppressed the evidence on the following analysis:

> "In this case the affidavit referred to the informant as reliable twice, once in the printed portion of the form and then again in the body of the affidavit, when, in fact, there was no basis to conclude that the informant was reliable. Detective Sergeant Gibbs could not have had a reasonable belief in the validity of a warrant based upon an affidavit that misrepresented an anonymous informant as reliable and was so otherwise lacking in indicia of probable cause."

*Id.* at 424 (citation omitted).

More in keeping with the tenor of *Leon* is *People v. Camarella*, 54 Cal.3d 592, 286 Cal.Rptr. 780, 818 P.2d 63 (1991). In May 1986 the police received a tip from an anonymous informant that the defendant was selling cocaine while employed as a bartender at a named bar in Tahoe City and from his home,

near a golf course. The police reviewed drug intelligence files that disclosed information received in February 1985 from an untested informant that the defendant sold cocaine. The files also revealed that the defendant had been arrested in November 1982 for possession of cocaine. The Supreme Court of California concluded that the affidavit presenting the above-described material did not demonstrate that a reasonable officer "would have *known* that the affidavit, as it existed at the time it was to be presented to the magistrate, was legally insufficient without additional and more recent corroboration." 286 Cal.Rptr. at 788, 818 P.2d at 71 (footnote omitted). The officer had "conducted more than a mere 'bare bones' investigation," and he had obtained "substantial corroborating information that, although stale, was sufficient to make the probable cause determination a close question for any objectively reasonable and well-trained officer. . . ." *Id.*

In the case before us the crime of theft was a consummated act. The police could not "investigate" whether the motorcycle was in the shed at 4766 Sands Road by going on the premises. Sergeant Clemens presented the information received and the extent of her confirmatory investigation to a circuit court judge to have the *Gates* issue decided. Under the facts here Sgt. Clemens was not obliged to withhold applying for the warrant. A reasonably well-trained officer would not have known that a judge should conclude that her investigation failed to satisfy the requirements of *Gates.*

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.*

BELL, J., dissents.

BELL, Judge, dissenting.

The good faith exception [1] to the exclusionary rule enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82

---

1. Query: is it an exception or intended to be the rule? The *Leon* majority writes as if it is the latter: "[S]uppression of evidence obtained

L.Ed.2d 677 (1984) is an established, if not correctly decided or well reasoned, principle applicable to the resolution of Fourth Amendment search and seizure issues. Consequently, and unfortunately, since the petitioner has not raised an issue under Maryland law, it is that principle that must be applied to the resolution of the case *sub judice.* I say unfortunately because I agree with the Brennan dissent in *Leon, see* 468 U.S. at 928–60, 104 S.Ct. at 3430–45, 82 L.Ed.2d at 702–721, and most of the Stevens dissent, *see* 468 U.S. at 960–61, 966–79, 104 S.Ct. at 3445–46, 3448–56, 82 L.Ed.2d at 722–23, 726–36; the commentators who have criticized the *Leon* holding, *e.g.,* Wayne R. LaFave, *A Treatise on the Fourth Amendment* § 1.3, at 46–80 (2d ed. 1987); Steven Duke, *Making Leon Worse,* 95 Yale L.J. 1405 (1986); Craig D. Uchida et al., *Acting In Good Faith: The Effects of United States v. Leon On The Police And Courts,* 30 Ariz.L.Rev. 467, 469–472, 475–495 (1988); Jane Campbell Moriarty, *United States v. Leon: How Is It Faring In The Thirteen Original Colonies?* 18 Search and Seizure L.Rep. 9 (1991). *See* Lawrence Crocker, *Can The Exclusionary Rule Be Saved?* 84 The J.Crim.L. & Criminology 310 (1993); Comment, *The Fourth Amendment: Death By Interpretation,* 24 U.West L.A.L.Rev. 147 (1993); and the State high courts that have rejected its rationale and excluded illegally seized evidence pursuant to state constitutional provisions, *e.g. State v. Marsala,* 216 Conn. 150, 579 A.2d 58, 62–69 (1990); *State v. Guzman,* 122 Idaho 981, 992–998, 842 P.2d 660, 671–77 (1992); *State v. Novembrino,* 105 N.J. 95, 519 A.2d 820, 845–857 (1987); *State v. Gutierrez,* 116 N.M. 431, 863 P.2d 1052 (1993); *People v. Bigelow,* 66 N.Y.2d 417, 497 N.Y.S.2d 630, 488 N.E.2d 451, 454, 457–458 (1985); *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 888, 892–906 (1991); *State v. Oakes,* 157 Vt. 171, 598 A.2d 119, 123–

pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. 897, 918, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677.

27 (1991).[2] *See People v. Sundling,* 153 Mich.App. 277, 395 N.W.2d 308, 314–315 (1986) (noting that the Michigan Supreme Court refused to adopt a good-faith exception prior to the *Leon* decision for essentially the reasons enumerated in the *Leon* dissents); *State v. Grawein,* 123 Wis.2d 428, 367 N.W.2d 816, 817–818 (App.1985) ("The State's request that the Court adopt the *Leon* good-faith exception flies in the face of controlling Wisconsin law").

I agree with the determination by the trial court, which the majority assumes to be correct, that the affidavit in this case failed to establish probable cause for the search and seizure. Under *Leon,* evidence seized pursuant to a search and seizure warrant is admissible, notwithstanding that warrant being deficient, whenever the police executing the warrant act in objectively reasonable reliance on it. 468 U.S. at 913, 104 S.Ct. at 3415, 82 L.Ed.2d at 692. An exception to the exception applies when the police act in reliance on "a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–611, 95 S.Ct. 2254, 2265–2266, 45 L.Ed.2d 416, 431 (1975) (Powell, J., concurring in part)). The *Leon* Court acknowledged that an officer relying on such a warrant could not be manifesting objective good faith. *Id.* Of course, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698, citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815–819, 102 S.Ct. 2727, 2737–2739, 73 L.Ed.2d 396 (1982).

The hearing judge concluded as follows:

---

**2.** Other states, with statutory exclusionary rules, reject the good faith exception as a matter of statutory construction. *See Gary v. State,* 262 Ga. 573, 422 S.E.2d 426, 428–29, 430 (1992); *State v. Garcia,* 547 So.2d 628, 629–630 (Fla.1989); *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548, 554 n. 5 (1985); *State v. Carter,* 322 N.C. 709, 370 S.E.2d 553, 559–62 (1988); *Davis v. State,* 831 S.W.2d 426 (Tex.Crim. App.1992).

While the informant in the case before this Court has provided information concerning a stolen motorcycle, there is nothing beyond a "bare conclusion" to place it at 4766 Sands Road. Additionally, the description of the property and those persons living on it does nothing to further the argument that contraband or evidence of a crime will be found at that location. The application is noticeably void of information concerning prior related criminal activity of the suspects, the veracity of the informant and independent corroboration of suspected criminal activity. The court certainly acknowledges that the above-referenced factors need not be present in every warrant application to support its issuance. The fluid "totality of the circumstances" test [3], however, allows weaknesses in one area of the application to be strengthen by a strong showing in another area.

Circuit Court opinion at 8–9. The corroboration that was done was of innocent details and, unlike in *Gates,* did not involve the verification of accurate predictions of future actions of a third party. Thus, the corroboration in no way tended to establish criminal activity. Moreover, confirming the existence of the address at which the informant says the stolen property is located and its physical description, does not make the commission of a crime or the location of its fruits more probable. Nor does the fact "that a crime fitting the description of the one related by the informant had actually occurred does not constitute probable cause to believe that the anonymous caller was telling the truth." *Bradley v. State,* 609 N.E.2d 420, 423 (Ind.1993). In addition, as the majority opinion acknowledges, there is, in this case, at least some ambiguity as to whether the commission of the crime was confirmed. The affidavit averred that the described motorcycle "was stolen from an Annapolis address across from the YMCA," while the reported corroboration was that a motorcycle of the same description was reported stolen from a specified address, without any indication that it was across from

---

3. The "totality of the circumstances" test was enunciated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

the YMCA: in stating the facts, the hearing court noted that "while the motorcycle reported stolen was of the same color, make and model as that described by the confidential source, the affidavit does not contain verification that 26 Woodward Court is 'across from the YMCA' in Annapolis." Circuit Court opinion at 2. The facts that a crime has occurred and the confirmation that it is that crime which prompts the request for a search and seizure warrant are critical to probable cause.

The question then is whether, based on the information in the affidavit a reasonably well-trained police officer would have believed that probable cause existed for the search of the petitioner's home. Clearly, what a reasonably well-trained police officer knows, or should know, is relevant to the determination of whether that officer's reliance is "objectively reasonable." *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. *See State v. Guzman*, 122 Idaho 981, 997, 842 P.2d 660, 676 (1991) (recognizing that "[t]he good faith exception ... places a premium on police ignorance of law" and that "[t]here can be no doubt that the police on the street know [that there are substantial disparities between magistrates as to how much evidence is required to obtain a search warrant] from experience and will use it to their advantage, absent a reason not to do so."). This is more clearly seen in *Leon* at 468 U.S. at 923–24, 104 S.Ct. at 3420–22, 82 L.Ed.2d at 699–700, in which the Court, giving its reasons, dismissed the dissents' criticism of the good faith reliance principle. Whether an officer's reliance is "objectively reasonable," of course, requires that we focus on the definition of a reasonably well-trained police officer, on what, in other words, such an officer should know?

A reasonably well-trained police officer is chargeable, first of all, with knowing what the Fourth Amendment prohibits: both unreasonable searches and seizures and the issuance of warrants except on probable cause.[4] Thus, he or she should

---

4. The Amendment provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be

know that a warrant cannot authorize an unreasonable search and a search without probable cause cannot be reasonable. *See Leon,* 468 U.S. at 960–961, 104 S.Ct. at 3445–46, 82 L.Ed.2d at 723. (Stevens, J. dissenting). He or she is also charged with knowledge of what is required for the establishment of probable cause—the *Gates'* totality of the circumstances test. A reasonably well-trained police officer must know, therefore, that the neutral and detached magistrate must be given sufficient information from which it could be found that there is a "fair probability that contraband or evidence of the crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Moreover, a reasonably well-trained police officer is charged with knowledge that the magistrate must make the probable cause determination on his or her own, using his or her independent judgment; he or she cannot "mere[ly] ratif[y] the bare conclusions of others." *Id.* at 239, 103 S.Ct. at 2333, 76 L.Ed.2d at 549. In other words, a reasonably well-trained police officer must know that the affidavit he or she submits has to "provide the magistrate with a substantial basis for determining the existence of probable cause, and ... wholly conclusory statement[s] ... fail[ ] to meet this requirement." *Id.* at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 549.

Prior to *Leon,* a reasonably well-trained police officer was well aware that merely because a search was conducted pursuant to a warrant issued by a magistrate did not guarantee that the search would be upheld as reasonable; indeed, that officer was aware that a challenge to the search would result in a reviewing court determining whether the magistrate acted properly in issuing the warrant and the invalidation of the search if he or she were found to have acted improperly. *Leon,* 468 U.S. at 969–70, 104 S.Ct. at 3450–51, 82 L.Ed.2d at 729 (Stevens, J. dissenting).

---

violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Finally, a reasonably well trained police officer must be aware of *Leon's* teachings. That officer, therefore, knows that, under *Gates* his or her failure to establish probable cause is not necessarily fatal—because the reviewing court defers to the judgment of the magistrate, in a case it deems doubtful, the reviewing court will find probable cause.[5] That officer,

---

5. Mr. Justice Stevens pointed out, as relevant to the case *sub judice*, that the totality of the circumstances test is flexible, as well as practical and commonsensical and, given the deference required to be paid the decision of the magistrate in doubtful cases, the State receives the benefit of the doubt. 468 U.S. at 967–68, 104 S.Ct. at 3449–50, 82 L.Ed.2d at 727–728. This formulation, he asserts, gives law enforcement officers all the leeway they need since "[t]o allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Id.* at 968, 104 S.Ct. at 3450, 82 L.Ed.2d at 728, quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302–1311, 93 L.Ed. 1879, 1891 (1949). Mr. Justice Stevens then said:

Thus, if the majority's assumption is correct, that even after paying heavy deference to the magistrate's finding and resolving all doubt in its favor, there is no probable cause …, then by definition—as a matter of constitutional law—the officers' conduct was unreasonable. The Court's own hypothesis is that there was no fair likelihood that the officers would find evidence of a crime, and hence there was no reasonable law enforcement justification for their conduct.

*Id.* at 968–69, 104 S.Ct. at 3450, 82 L.Ed.2d at 728.

Similar sentiments were voiced by Mr. Justice Brennan, who pointed out:

[G]iven the relaxed standard for assessing probable cause established just last Term in *Illinois v. Gates*, 462 U.S. 213[, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983), the Court's newly fashioned good-faith exception, when applied in the warrant context, will rarely, if ever, offer any greater flexibility for police than the *Gates* standard already supplies. In *Gates*, the Court held that '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, … there is a fair probability that contraband or evidence of the crime will be found in a particular place.' *Id.* at 238, 103 S.Ct. at 2332[, 76 L.Ed.2d at 548]. The task of a reviewing court is confined to determining whether 'the magistrate had a "substantial basis" for … conclud[ing] that probable cause existed.' *Ibid.* Given such a relaxed standard, it is virtually inconceivable that a reviewing court, when faced with a defendant's motion to suppress, could first find that a warrant was invalid under the new *Gates* standard, but then, at the same time, find that a police officer's reliance on such an invalid warrant was nevertheless 'objectively reasonable' under the test announced today. Because the two standards overlap so completely, it is unlikely that a warrant could be found invalid under *Gates* and yet the police reliance upon it could be seen as objectively reasonable;

therefore, now knows that, so long as he or she objectively and reasonably relied on the warrant, the fruits of the search, even though the search be unreasonable, because not based on probable cause, may be admitted. Logically, because it may otherwise be a disincentive for the police to conduct efficient and appropriate investigations, *Leon* must envision that reasonably well-trained police officers, aware of the flexibility of the *Gates* probable cause requirements and the further loophole it provides, would not submit an affidavit that he or she knows is borderline, at best, in the hopes that the magistrate will find the issue debatable. Thus, a reasonably well-trained police officer would not submit an affidavit to a magistrate for a probable cause determination that the officer knows, or should know, does not establish probable cause. By the same token, and for the same reason, the reasonably well-trained police officer would not submit an affidavit of which he or she has, or should have, substantial doubt.

I am satisfied that it must have been obvious, even manifest, to a "reasonably well-trained police officer" that the affidavit in this case did not establish probable cause. *See Com. v. Edmunds*, 586 A.2d at 891 n. 3. As the hearing court found, it contained "nothing beyond a 'bare conclusion' " that the stolen property would be found at the location reported. An affidavit containing nothing more substantial than that is hardly sufficient to pass the threshold required for submitting for a probable cause determination an affidavit purporting to establish probable cause. Since any reasonably well-trained police

otherwise, we would have to entertain the mind-boggling concept of objectively reasonable reliance upon an objectively unreasonable warrant.
468 U.S. at 958–59, 104 S.Ct. at 3444–45, 82 L.Ed.2d at 721–722.
*State v. Oakes*, 598 A.2d 119, 125–26 (Vt.1991) suggests that "[a] further consequence of removing review of the issuing judicial officer's probable cause determination is that there will be less guidance to these officers as to what constitutes sufficient probable cause. Without such guidance, the incidence of mistakes by issuing judicial officers will increase."

officer aware of *Leon* would know that,[6] objectively, no reasonably well-trained police officer reasonably could rely on it. *See Bradley,* 609 N.E.2d at 423–24 (no reasonable belief in validity of warrant which misrepresented the reliability of informant and did not provide sufficient evidence to meet the totality of the circumstances test); *State v. Huggins,* 733 F.Supp. 445, 448 (D.D.C.1990) (affidavit did not provide temporal context for information); *United States v. Corrigan,* 809 F.Supp. 567 (M.D.Tenn.1992) (same); *People v. Reed,* 202 Ill.App.3d 760, 147 Ill.Dec. 829, 832, 559 N.E.2d 1169, 1172 (1990) (bare bones, facially overbroad warrant); *State v. Diamond,* 628 A.2d 1032, 1034 (Me.1993) (affidavit based solely on non-criminal behavior and containing no information from which to corroborate that evidence of criminal activity would be found); *State v. Hammett,* 784 S.W.2d 293, 297 (Md.App. 1989) (bare bones affidavit).

I dissent.

---

**6.** It is curious, and troubling, that, although the petitioner does not raise the issue, a search of the house, including in places in which a motorcycle could not possibly fit was authorized by, and conducted pursuant to, this warrant.